ABSTON *v.* STATE.

Opinion delivered May 29, 1922.

1. CONSPIRACY—SUFFICIENCY OF EVIDENCE.—In a prosecution for night-riding under Crawford & Moses' Dig., § 2795, evidence that accused and others banded themselves together for the purpose of blowing up some strip-pit mines during the night time, and that, when arrested in an abandoned slope near the mines, they were armed and masked, *held* sufficient to warrant a conviction.

2. CRIMINAL LAW—QUESTION FOR JURY.—Where the evidence was conflicting, the question whether a witness was an accomplice was for the jury.

3. CONSPIRACY—SUFFICIENCY OF EVIDENCE.—Under an indictment which charged that accused conspired to wilfully damage a certain strip-pit mine, evidence that three strip-pit mines adjoined each other, and were not far from where accused and his confederates were arrested, *held* sufficient to show that they intended to damage the strip-pit mine described in the indictment.

4. CRIMINAL LAW—EXEMPTION OF WITNESSES FROM RULE.—It was within the court's discretion to exempt the prosecuting attorney, sheriff and deputy sheriff from the rule against the presence of witnesses in the courtroom.

5. CONSPIRACY—ADMISSIBILITY OF EVIDENCE.—In a prosecution for night-riding, evidence of the finding of firearms and ammunition on the morning after the arrest of the accused and his confederates, at the place of the alleged unlawful assemblage, *held* admissible.

6. CONSPIRACY—EVIDENCE.—Evidence as to the finding of dynamite in a weather-beaten condition near the scene of an unlawful assemblage two weeks thereafter was properly admitted as against the objection that it was too remote; the weight of such evidence being for the jury.

7. CRIMINAL LAW—GENERAL OBJECTION TO INSTRUCTION.—A mere general objection to an instruction does not preserve for review the question whether the instruction is calculated to confuse and mislead the jury.

Appeal from Johnson Circuit Court; *A. B. Priddy,* Judge; affirmed.

*Webb Covington,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

McCULLOCH, C. J. Appellant was indicted and convicted of the crime of night-riding, a felony under the statutes of this State. Crawford & Moses' Digest, sec. 2795 *et seq.*

There were two counts in the indictment, the first one charging that appellant and Bob Ragon, Otis Clark, Bascal Morgan and Jim Cornett "did unite, confederate and band themselves together for the wilful and unlawful purpose of doing an unlawful act in the night time by wilfully, unlawfully and maliciously injuring the mining property of Werner-Dunlap Coal Company." The other count alleged that appellant, together with the persons named in the first count, "did unite, confederate and band themselves together for the purpose of doing unlawful acts while riding masked, and being disguised and armed, and then and there wilfully, unlawfully and feloniously, while so masked and disguised and wearing arms, did go

forth in the night time for the purpose of wilfully, unlawfully and maliciously damaging and destroying the mining property of Werner-Dunlap Coal Company."

According to the evidence adduced, the offense was committed in the cual regions of Johnson County, near Spadra.

Appellant was the secretary of one of the miners' unions operating in the locality, and there was friction between the union miners and the operators concerning the conduct of the operators in bringing in non-union labor to work in the mines. The character of mining done there was what is called "strip-pit" mining. The coal lies near the surface, and the method is to strip the earth from the surface down to the layers of coal and then mine out the coal without sinking a shaft or slope.

It appears from the testimony that there were in that locality three mines of this character, all of which were adjoining each other, and one was owned and operated by the Werner-Dunlap Coal Company, a copartnership composed of Lewis Werner and Bob Dunlap. These mines were within a mile or two of the place where appellant and his associates were alleged to have gathered for the purpose of committing the unlawful act of injuring the mining property.

The offense is alleged to have been committed on Saturday night, September 24, 1921.

According to the evidence, the union of which appellant was the secretary and one of the leaders, met in regular session on the preceding Tuesday night at the hall where they were accustomed to meet, and near the close of that meeting appellant privately requested a portion of the members—twelve or fifteen of them—to meet him across the railroad track for a conference. According to the testimony, when this small number of the members of the union met across the railroad with appellant, he addressed the assemblage and stated that the strip-pit mines were a menace to the community,

that the course pursued by the operators was starving the miners and their families, and that they (the miners) must get rid of the strip-pit mines. Appellant suggested that those present go out and blow up the strip-pit mines and run the inmates off, and called a meeting and suggested that all present assemble the following Saturday night at an abandoned slope in an old field or prairie, a few miles distant. This testimony comes from one Wilson, a witness who, according to some of the testimony adduced, was an accomplice.

Before the date named, Wilson informed Mr. Dunlap of the plan, and the sheriff and his deputies were at the designated place (the old slope) on Saturday night, and there arrested appellant and numerous other parties who were masked and armed. Firearms were taken from the persons of appellant and other parties, and the next morning the sheriff found guns and ammunition at the place where they had assembled the night before. About two weeks later one of the deputies of the sheriff found some dynamite concealed in a stump near one of the strip-pits and also the fuse, which had been rained on, and had been concealed at that place for a considerable length of time, at least long enough to become weatherbeaten.

There is a conflict in the testimony, and appellant denied all the charges with respect to conspiracy to injure property, and also denied that he wore a mask at the time he was arrested at the slope. He admitted that he was armed at the time, as did others who were arrested at the same time, but they all claimed that, on account of the bringing in of lawless non-union miners, it was necessary to go armed for self-protection. Appellant denied that he advised unlawful methods or that he met or conspired with any parties for the purpose of committing any unlawful act, and stated that he passed along by the old slope for a wholly different purpose and on a different mission.

The evidence tends to show that appellant and those who were arrested with him on the occasion named were men of good character in the community.

Our conclusion is that the evidence was sufficient to sustain the verdict.

It is earnestly insisted that Wilson, according to the undisputed evidence, was an accomplice, and that there was not sufficient corroboration. We are of the opinion, however, that it is not undisputed that Wilson was an accomplice in the commission of the alleged offense, but that there was enough evidence to justify a submission of that issue to the jury. This was done by one of the court's instructions.

Wilson admitted that he was at the meeting of the miners' union on Tuesday night, and that he attended the private meeting called by appellant after the adjournment. He admits listening to appellant's proposition to the other men to mask themselves and join together for the purpose of committing an unlawful act, and that he asked the question, in response to appellant's proposition, why they did not send off and get non-resident persons to come in and use the dynamite; but on direct inquiry he stated that he did not agree to go into the enterprise with appellant and the others, and that before the meeting at the slope on the following Saturday night he informed Dunlap of the plans, and that he attended the meeting at the request of the sheriff and not for the purpose of joining in the unlawful acts to be thereafter committed.

Appellant requested the court to give an instruction telling the jury that Wilson was an accomplice and must be corroborated. The court refused to give that instruction, but did give one submitting to the jury the question whether or not Wilson was an accomplice, and stating that if it was found that he was an accomplice he must be corroborated before there could be a conviction on his testimony.

It is also urged that the evidence fails to make out the offense because it does not show that the property of the Werner-Dunlap Coal Company was to be injured, but merely shows that the parties agreed to blow up or damage the strip-pit mines, without indicating which ones were to be subject of attack.

The three strip-pits were adjoining each other and not very far distant from the place where appellant and his co-conspirators assembled, and the inference was warranted that they intended to direct their operations toward all of the strip-pits in that locality, including the one owned and operated by the Werner-Dunlap Coal Company. The evidence on that issue was, we think, sufficient.

It is next contended that the court erred in enforcing the rule against the presence of witnesses in the court room, in exempting three of the State's witnesses from the operation of the rule. The witnesses exempted were the sheriff himself (Mr. Bartlett), Brock, the prosecuting attorney, who acted as one of the sheriff's deputies on the night appellant and his associates were arrested at the slope, and W. S. Jett, who was also a deputy sheriff but was an employee at the mines.

It was a question within the discretion of the court in determining which of the witnesses should be exempted from the operation of the rule, and we cannot say that there was an abuse of the discretion in this instance. *Vance* v. *State,* 70 Ark. 272; *St. L. I. M. & S. Ry. Co.* v. *Pate,* 90 Ark. 135.

It was clearly competent for the State to prove the finding of firearms and ammunition at the place of the alleged unlawful assemblage the next morning after the parties were arrested, but it is contended that the finding of the dynamite and fuse two weeks later near the strip-pit was too remote to be admissible.

No precise rule can be laid down with respect to admissibility of testimony concerning conditions existing after the commission of an offense. In some circum-

stances the court may say, as a matter of law, that it is too remote, and again, under other circumstances, it may be determined as a matter of law that the general condition is not remote and should be considered as evidence, and still again, under other circumstances, it may be a question to submit to the jury to determine the remoteness of the circumstances adduced in evidence. Of course, in either event, the weight of the testimony is a question for the jury. The finding of dynamite secreted near the scene of the crime two weeks after its commission would appear to be too remote a circumstance to throw any light upon the issues involved, and, if nothing else is shown, the circumstances would perhaps be inadmissible, but in this instance it was shown that the explosive appeared to be weather-beaten, as if it had been there some time, and the jury could have inferred that the explosive had been secreted there about the time of the commission of the offense, and this would be a circumstance tending, in some degree, to show that there had been preparations made to blow up the mine. It was, as before stated, a question for the jury to determine what inference should be drawn from that circumstance, and we think it was a competent circumstance to go to the jury.

It is contended that the court improperly permitted the State to introduce in evidence statements of the co-conspirators in the absence of appellant after the arrest of the former, but we do not find in the record that any such testimony was introduced.

Error of the court is assigned in giving the following instruction:

"In determining whether or not the defendant and these parties alleged in the indictment, or either of them, united or banded themselves together or confederated themselves together for the purpose of doing an unlawful act charged, it is proper, of course, and you may take into consideration, not only all the evidence that has been introduced, but all the facts and circumstances to which

the witnesses have testified in this case, in determining whether or not such a confederation or such a uniting or such a banding took place between the defendant and those charged, or any of them. That is true, of course, in all cases. That is what in law is called direct evidence. And all the direct testimony and all the circumstantial evidence may be taken into consideration by you in determining the guilt or innocence of the defendant in this case.''

The objection to this instruction was general and not specific. The language used expressed a confused distinction between direct evidence adduced and proof of facts and circumstances, but, when the whole of instruction is considered together, it is manifest that the court meant to deal with the subjects of direct evidence and circumstantial evidence. If objection was to be made to that feature of the instruction, it should have been done specifically.

The particular argument made here against the instruction relates to that part which refers to the banding together ''between the defendant and those charged, or any of them,'' it being contended that this permitted the jury to convict appellant upon proof of the banding together of any of the alleged conspirators.

If it be conceded that this language is of doubtful meaning and could be construed to mean that the defendant could be convicted on such proof, the objection ought to have been made specific. The instruction correctly directed the jury to consider, not only the direct testimony, but all the circumstances in the case, for the purpose of determining whether or not appellant and the other parties named assembled together and masked themselves for the purpose of committing an unlawful act in the night time. There is direct testimony on this subject, and, aside from the direct testimony of Wilson, the principal witness, it is a strong circumstance that appellant and numerous other parties were discovered gathered together at this remote place in the night time, masked and armed.

We do not think that this instruction was erroneous, or, at least, that it contained such obviously erroneous statements which could be reached by a general objection.

Error of the court is assigned in refusing to give some of the instructions requested by appellant, but we are of the opinion that the refused instructions were fully, or at least sufficiently, covered by those which the court gave.

The evidence was considered by the jury, and by the trial court on the motion for a new trial, and since it is legally sufficient to sustain the verdict, we do not feel at liberty to disturb it.

There is no error found in the record, and the judgment will therefore be affirmed.