## RANSOM v. STATE.

Opinion delivered September 28, 1931.

*Jackson & Blackford,* for appellants.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

BUTLER, J. Three youths, Raiford Ransom, Charles Ransom and James McElroy, were indicted for the murder of J. H. Jenkins. The cases were by consent con-

solidated for the purpose of trial, which trial resulted in a verdict of guilty of murder in the second degree as to each of them and punishment fixed at imprisonment for twenty-one years in the State penitentiary.

It is contended here that the evidence is not legally sufficient to support the verdict against any of the defendants. This is the only ground urged by counsel for the reversal of the case.

At the time of the homicide the defendants, who were from seventeen to nineteen years of age, had been trapping near the town of Bunny, and on the forenoon of December 11, 1928, returned from their trapping to the town where they had a Ford car in which they left going north on the highway leading past the town. Shortly after their departure a rural mail carrier followed along the same route, and, after having gone about two miles north and turned into an intersecting road going east for about 150 yards, he discovered the automobile of Jenkins near the center of the road and the body of Jenkins lying on the right side of, and parallel with, the car with his head toward the front end of the car. The body was lying on the right hand with the left arm straightened out, the feet being about five or six feet from the front end of the car. On approaching the body, it was discovered that the motor of the car was still running and that Jenkins was dead. His pistol scabbard which was attached to his belt was empty. A light rain had been falling, so that marks on the highway were easily discoverable. From these it appeared that only two cars had traveled the highway that morning before the mail-carrier reached the scene of the killing. From the tracks it appeared that the car, which afterwards was found to be the one in which the defendants had been riding, had been stopped near the right side of the highway going north, and Jenkins' car passed to the left and stopped about the center of the highway about twenty-five feet from the defendant's car. Foot tracks revealed that Jenkins had got out of his car on the

left and walked around the front end of it to a point about opposite the middle of the right-hand fender and stopped facing in the direction of defendant's car. The automobile tracks showed that, after having stopped, the defendant's car moved forward and around Jenkins' car and stopped again about thirty feet away from where the body of Jenkins lay, and from this point foot-steps led to the body of Jenkins and back to where the defendants' car had been stopped the second time. From this point the car of defendants moved on to where it was afterwards found at the home of the father of Raiford Ransom.

The three boys were arrested, and Raiford Ransom admitted having killed Jenkins. The statement of Raiford Ransom and that of the two other defendants were much alike and about as follows: When the defendants left Bunny, all three were riding on the front seat of the car, Raiford Ransom in the middle with a forty-five calibre Colt pistol on the seat by his side. They had in the car a gallon can of coal oil. They travelled north for about two miles and then east on an intersecting road about 150 yards in the direction of the home of the Ransom boys. Just before they reached this point they heard a car behind them which sounded its horn several times, and McElroy, the driver of defendant's car, was told by Raiford Ransom to stop. He drew over to the right hand side of the road and did so. As he stopped, the other car passed to the left and stopped about 25 feet away at about the center of the highway. The man got out on the left, walked around to the front of his car to its right side with a pistol in his hand and ordered the three boys to stand up and turn their pockets out, stating that he intended to search their car. None of the three defendants knew who the man was though it was afterwards discovered that he was Jenkins, a deputy sheriff. The defendants obeyed his command, and McElroy was told to stand where he was, and the others were told to get out of the car. There was no floor board

in the bottom of defendants' car and as Raiford Ransom arose he fell through the opening in the floor of the car. Jenkins immediately fired two shots in his direction and when he arose Jenkins fired two more shots at him. Jenkins then exclaimed, "If I haven't hurt you yet, I will," and unbreached his pistol, feeling in his pocket. At this time Raiford Ransom obtained the pistol from the seat of the car and fired twice at Jenkins, striking him twice in the breast, one of the bullets passing through his body and one not quite penetrating it. Jenkins fell to the ground. The defendants started their car and passed by Jenkins, running over one of his feet. About thirty feet further on they killed their engine. While starting it again, Raiford Ransom looked backward and saw Jenkins trying to reach his pistol which had fallen from his hand. Raiford Ransom then returned to Jenkins, took possession of the pistol, returned with it to his car, placed it in the back of same, and the three proceeded to the home of the father of the Ransom boys.

Several witnesses, who were from a quarter to a half mile away from the scene of the shooting, testified that they heard some firing in that direction, but were not very clear as to the number of shots fired or as to the intervals between them. Upon this state of facts counsel for appellant insist that the jury should have returned a verdict of not guilty on the ground of justifiable homicide, and that there is no case of unlawful homicide made against the defendants.

Raiford Ransom having admitted killing Jenkins, the burden of proving facts which would tend to justify or extenuate his act devolved upon him and the jury had the right to scrutinize his testimony and that of his codefendants in the light of attendant circumstances in order to determine whether his statements were made in good faith and true, or whether they were untrue and made simply to avoid the consequences of his act. Crawford & Moses' Digest, § 2342; *Houston* v. *State,* 165 Ark. 294, 264 S. W. 869; *Jimmerson* v. *State,* 169 Ark. 353, 295 S. W. 956.

His testimony and that of his companions is to the effect that they were unacquainted with Jenkins and did not know that he was an officer. While there is no direct testimony tending to contradict this statement, it is apparent from all of the testimony in the case that Jenkins had been an officer of the law for some time, active in the discharge of his duties, and had acquired the soubriquet of ''Bugaboo Jenkins'' among those with whom the defendants associated. Therefore, the jury might reasonably have doubted the truth of the statements of defendants regarding their acquaintance with the deceased. These statements were also to the effect that Jenkins approached within a short distance of defendants' car—about five feet—when he began firing, while the physical facts show that he never got beyond the center of the front fender of his car, nor was it reasonable that firing four shots within five feet of the car and its occupants that none of the bullets would have found its mark or struck any portion of the car. Again, it was testified by the defendants that the deceased threw the cylinder of his pistol out of position and was feeling in his pocket as if searching for cartridges, but it is significant that no exploded shells of the calibre of Jenkins' pistol were found at the scene of the killing and that the pistol itself had been taken away and kept by the defendant, Raiford Ransom, until recovered by the officers.

Another circumstance testified to by defendants might have appeared to the jury so out of the ordinary manner that men follow in a crisis of this kind as to render it unworthy of belief, i.e., that after the defendants had started their car and were on their way Raiford Ransom returned some thirty feet to the body of Jenkins and picked up the pistol and carried it away because Jenkins was reaching for it as he lay on the ground. The position of Jenkins' body and the nature of his wounds were such that the jury might well have inferred that he fell in his tracks and probably never moved again. All of these circumstances were considered by

the jury and were sufficient to justify the conclusion that the statements of the defendants as to the manner in which the killing occurred was untrue. Since the jury is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony, its conclusion must not be disregarded if there is any substantial evidence, direct or circumstantial, to support the verdict. *Ford* v. *State,* 167 Ark. 677, 268 S. W. 24.

The case of Charles Ransom and James McElroy stands on a different footing. They were not the actual slayers of Jenkins, and the burden was upon the State to show by some affirmative testimony, direct or circumstantial, that they in some way aided, abetted or encouraged Raiford Ransom in taking the life of Jenkins, or that they actively consented to such act. The mere fact that they were the companions of Raiford Ransom on the journey in question and were present at the scene of the killing is not sufficient to justify their conviction. The court should have so told the jury as requested by them in instruction No. 1. 29 C. J. p. 1069, § 42; 13 R. C. L., p. 727, § 27; *Vasser* v. *State,* 75 Ark. 373, 87 S. W. 635.

We have examined the record and fail to find any testimony which tends to establish the guilt of Charles Ransom and James McElroy. It is true that the jury has found that their testimony regarding the killing was untrue, but this only served to negative the defense offered by the principal defendant, and did not in any way tend to show that they had any previous knowledge of his intention or to establish the fact that they were aiding and encouraging Raiford Ransom in the commission of the homicide. All that the evidence shows with any reasonable degree of certainty is that Jenkins suddenly appeared on the scene without any previous knowledge on the part of the defendants that he was likely to do so. There is no proof of any circumstance tending to show that the defendants were on an unlawful mission or that there was any reason for them to appre-

hend danger at the hands of the deceased, or any reason offered as to why they should have borne any malice toward him. The bare fact that Charles Ransom and James McElroy were the companions of Raiford Ransom and present at the time of the shooting is all that has been disclosed by the testimony in this case. At most, there could arise but a mere suspicion of any guilty knowledge upon their part as to the intention of the principal defendant, or of any act upon their part which might have encouraged him in the commission of the deed. This is not sufficient to satisfy the law.

It is ordered that in the case of Raiford Ransom against the State of Arkansas, the judgment of the lower court be affirmed, and in the case of Charles Ransom and James McElroy the judgment is reversed and the cause remanded for a new trial.