## FOREHAND V. STATE.

NEW TRIAL: *For misconduct of jury.*

On a trial for murder, the defendant having testified that the deceased made such an attempt to shoot him with a pistol as would have justified the killing, the jury after retiring obtained the pistol and cartridges used by the deceased and experimented with them, apparently for the purpose of testing the truth of the defendant's statement. *Held:* That this was taking evidence out of court and in the defendant's absence, and was such misconduct on the part of the jury as entitled him to a new trial.

APPEAL from *Pope* Circuit Court.

G. S. CUNNINGHAM, Judge.

The appellant was indicted for murdering W. C. Marberry by shooting him with a gun and was convicted of 'murder in the second degree.

Among other grounds set forth in his motion for a new trial is the following: "9. That the defendant was prejudiced by the misconduct of the jury after they had retired to consider of their duties, in that they did not rest their deliberations on testimony * * adduced on the trial, but in his absence * * * proceeded with the further investigation of the charge against him by boring out the ammunition of one of the pistol cartridges and snapping the pistol on the cap of the cartridge." * * * This ground of the defendant's motion was supported by the affidavit of James R. Oates, in which it is stated: "That the jury after they had retired to consider of their verdict, requested that the pistol of deceased which the evidence identified as 'his and which was' found lying at his left side when his body was discovered, together with the cartridges it contained at the time, be sent them;" that affiant "was bailiff of the jury and made their request known to the court," and also to the attorneys both for the State and the defendant; that pursuant to the request of the jury he delivered to them the pistol and cartridges referred

to; that when the pistol and cartridges were returned to him by the jury the lead had "been bored out of one of the cartridges and the powder taken out and the cap of the cartridge so bored, had the appearance of having been snapped on;" that this was done after the articles were delivered to the jury; that one of the jurors, naming him, stated to affiant "that after said pistol and cartridges were delivered to them, they bored the lead and ammunition out of one of the cartridges and put such cartridge * * * * into the pistol and snapped it;" and that the cap exploded.

On the trial there was evidence to show that an improper intimacy had existed between the defendant's wife and the deceased for about two years next before the latter's death. The defendant testified that an altercation had occurred between him and the deceased a few months before the killing and that subsequently he had several times seen the deceased in the woods near his (defendant's) house with a gun; that on one of these occasions the deceased had presented a double-barreled shot gun at him and compelled him to throw up his hands; that on Friday, the 22d of March, his wife told him the deceased had visited their house on the day before and presenting his gun had compelled her to go to the edge of the woods and talk to him and that in that conversation the deceased had told her that he would kill the defendant if the latter did not leave before the grand jury met and that he would, in a certain event, return on the Monday following—March 25th; that early Monday morning he (the defendant) took his shot gun and concealed himself in some fallen tree tops about sixty yards from his house and in front of his gate so, as he expressed it, that he "would have the advantage of the defendant if he did come;" that about noon the deceased approached stealthily to within 35 or 40 yards

of the defendant's place of concealment, when the latter ordered him to throw up his hands; that the deceased did not obey the order, but drew a pistol and the defendant shot at him; that deceased wheeled to run and the defendant shot at him a second time; that deceased ran off out of sight and the defendant not knowing whether he had wounded him, put his dog on his track and presently heard the dog baying and the deceased calling him; that having reloaded his gun, he went cautiously out to where he had heard the deceased calling him; that he found the deceased at a "branch," and as he approached him the deceased said: "Charley, I love you, come to me; I don't blame you for this; I thought I would get you first, but you have got me;" that after further conversation in which the deceased spoke of the wound he had received, he requested the defendant to procure a wagon and take him home and also to give him some water; that after dipping water from the branch in his hands and giving it to the deceased, he "started to Sam Battenfield's to get a wagon to take deceased home and as he stepped across the branch and had gone some little distance, say six or eight steps, he heard a pistol cock and turning saw deceased with a pistol in his left hand, coming up or raising it on defendant;" that deceased was "raised up or sitting up a little," and that he, defendant, shot at him again and then ran off without looking to see whether the third shot had taken effect.

The evidence also showed: that the defendant surrendered himself to a deputy sheriff on the day the killing was done and stated to that officer and several other witnesses for the State the circumstances of the killing substantially as stated above; that the body of Marberry was found near a small branch; that a five-shooting pistol was found on the ground.

about six or eight inches from the body; that it was cocked and the muzzle was pointing from the body, but a little inclined towards the feet; that the hammer of the pistol seemed to be caught or hung and one of the cartridges had been "snapped on;" that the body when found did not appear to have been disturbed and showed a number of wounds in the chest, head and other parts of the body.

The testimony of D. D. Wortham, alluded to in the opinion of the court, was as to certain conduct of the defendant's wife indicating an improper intimacy with the deceased; and that of Mrs. Simpson related to Mrs. Forehand's reputation for unchastity because of her relations with the deceased. The testimony of W. H. West detailed obscene remarks made by the defendant in his wife's presence or indecent allusions made to her in her absence.

James Fry was permitted to testify that while he was guarding the defendant pending the coroner's inquest, the defendant's wife stated to him in the presence of the defendant, that she knew the deceased would go out to defendant's house as soon as he learned that defendant had gone to Fort Smith; that she told her husband when he shot the deceased that he had missed him with both barrels and that defendant replied "no, it was the fault of the d—d gun," and that she knew the defendant had not gone to Fort Smith, but was in the tree top.

R. C. Bowden testified that over a year before the killing of deceased, he and others were engaged in a conversation concerning the case of a man who had then recently killed another for criminal intimacy with his wife, and that in the course of the conversation the defendant remarked that he "did not care who drank at his spring so they left the dipper." The witness also stated that he had heard the de-

Forehand v. State.

fendant make the same remark more than once and that it was generally known that he made such remarks.

*E. B. Henry* and *J. G. Wallace* for appellant, argue the case orally and submit that:

It was error to admit the evidence of Simpson, Bowden, West, Fry and Wortham. The declarations of defendant were not part of the *res gestæ*. Wood's Pr. Ev., p. 413, sec. 146; Whart. Cr. Ev. (9th ed.), sec. 484, note 6; 1 Gr. Ev. (11th ed.), secs. 52 and 448. For the rejection of Wortham's testimony, see Whart. Cr. Ev. (9th ed.), secs. 29 and 30, note 1; Thomps. Trials, vol. 1, p. 350.

The declarations of defendant's wife were inadmissible. Wh. Cr. Ev. (9th ed.), sec. 699, notes 2 and 3; sec. 700, note 5; 1 Gr. Ev. (11th ed.), sec. 111; 20 Ark., 225; 45 Id., 166; 43 Id., 99.

Defendant had the right to prevent and defend his premises against force or fraud or to prevent the act of adultery with his wife. 4 S. W. Rep., *Estep v. Commonwealth;* 7 S. E. Rep., 611; 64 Ga., 453.

The 8th instruction is cumbersome, misleading and not the law. *Bumley v. State*, 21 Tex. Ct. Ap.; 20 Ib., *Bell v. State*; 43 Ib., 242; Whart. Hom.———

There was evidence to support the seven instructions asked by defendant. 87 Ill., 553–4.

The cause should be reversed for the misconduct of the jury, and it is not necessary for defendant to show prejudice. 2 Thomp. Trials, sec. 2611, page 1974, note 3; Thomp. & Mer. on Juries, secs. 438–9; Hayne New Tr. & Ap., sec. 386; 30 N. W. Rep., 681; 68 Mo., 202; Mansf. Dig., sec. 2297.

*W. E. Atkinson,* Attorney General, for appellee.

Argued orally.

The appellant sought and brought on the difficulty and he cannot justify under the circumstances.   40 Ark., 454.   The facts make a clear case of murder.   Whart. Cr. Law, sec. 459 and note.

The 6th instruction not objectionable.   Adultery contemplated or consummated does not justify or excuse killing.

The 8th instruction should be construed with sec. 1553, Mansf. Dig., which was read to the jury, and the 6th instruction.

The privilege of confidential communications between husband and wife does not apply to close the mouth of a third party who heard them.   Wh. Cr. Ev., sec. 398.

It is not every irregularity or misconduct of a jury that will entitle a defendant to a new trial.   There must be prejudice to his rights.   *Palmer v. State*, 29 Ark., 253–4–5, 269.   Can the defendant raise this objection after permitting it to occur without objection?   Hayne New Tr. & Ap., sec. 27; see Id. 2; 49 Ga., 105; 39 Ib., 661; 44 N. H., 385; 53 Me., 535; 30 Ark., 328, has been modified by 105 Ind., 269.

PER CURIAM.

If the defendant's statement of what took place at the branch is true, then the killing was in self-defence after the defendant had really and in good faith abandoned the pursuit of his victim.   The jury's misconduct in taking the deceased's pistol and cartridges to the jury room and there experimenting with them apparently for the purpose of testing the truth of the defendant's statement, was prejudicial to him. It was evidence taken by the jury out of court in the defendant's absence which is prohibited by the statute and con-

trary to the idea of fair and orderly proceedings. The facts are proved by the bailiff who had the jury in charge. For the error in that behalf the judgment must be reversed.

The testimony of D. D. Wortham, W. H. West and Mrs. J. T. Simpson and that of Jas. Fry, in so far as it related to the statements made by the defendant's wife, had no tendency to prove the issue and should have been excluded from the consideration of the jury.

The testimony of R. C. Bowden could become competent only to rebut some theory developed by the evidence for the defence: as, that the killing was done in a sudden heat of passion brought about by information of the wrong the deceased had done him.

There is serious question as to the sufficiency of the 8th instruction to put the law of self-defence fully before the jury and give proper qualification to the 6th instruction.

There was no error in the refusal of the court to give the seven instructions asked by the defendant.

Reverse the judgment and remand the cause for a new trial.