HERRON *v.* STATE.

4220                                                      154 S. W. 2d 351

Opinion delivered October 6, 1941.

*Seth C. Reynolds,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

MEHAFFY, J.  The appellant was convicted in Little River circuit court of murder in the first degree, the jury returning the following verdict: ''We, the jury, find the defendant guilty of murder in the first degree as charged

928

in the information." Motion for new trial was filed and overruled, and the case is here on appeal.

Willard Locke testified in substance that he was sheriff of Little River county and had been deputy sheriff for over twelve years; he investigated the case against the appellant and found that both Nathan and Eugene Frierson were killed on Little River. This witness described the house and the roads and highways; the road runs through a graveyard about two and a half miles north and west of the house where the killing occurred, about a quarter of a mile from the road to the house where Luther Richards lives; the road ends at the farm where the killing occurred; the road runs to a gate and it is over 250 yards from the gate to the house. This witness testified that appellant told him that he went through the fence down to the lot and heard a negro in the lot feeding stock; that appellant went out to the lot, sat behind a tree until the man went back to the house; this was one of the men who was killed; after this man had fed the stock, appellant slipped through the fence in the yard and walked up to the window; that the curtain was torn and he could see this man behind the stove in the corner; could see the top of his head behind the curtain and he stuck his gun through the window and shot at his arm, which was all he could see; he first killed Eugene Frierson, killed him outright; the other one died the following day. Witness found shots in the walls of the house; it would not have been possible for the shots in those three places to have come from the same shell; there was a window and three doors in the west front room. Appellant told witness where the horse was tied.

This witness was corroborated by Arthur Sellman, a deputy sheriff, and by Willie Richards, who swore that the negro who was killed had on a coat and was on the floor. The coat was then offered in evidence.

A number of other witnesses testified, but the fact that appellant shot and killed two men, Nathan and Eugene Frierson, is undisputed. Nathan Frierson and appellant had, according to appellant's testimony, been having trouble for the past two or three years. Appellant testified that Nathan Frierson had been paying atten-

tions to appellant's wife; he had talked with him and tried to get him to quit and leave her alone, but Nathan Frierson said that if appellant's wife did not come with him he was going to kill her and if appellant interfered he was going to kill him. Appellant claims to have gotten the shells for the purpose of rabbit hunting; but he did not go hunting and the evidence is in conflict as to why he did not. He says he did not know who lived in the house where he killed the negro; he was simply looking for his wife and not thinking about trouble at all; when he looked in at the window he saw Nathan Frierson with his arm around his wife, and he immediately shot; the other persons in the room ran into the kitchen and Nathan Frierson who was shot first by appellant was killed immediately; appellant then shot and killed Eugene Frierson. Appellant testified that when he saw Nathan Frierson through the window sitting on a bench with his hands around appellant's wife, it made him so mad he shot him; he shot him because he had told him to let his wife alone, and after appellant had left home Nathan came and got her; he said he just pulled his gun and shot and all of them started running to the kitchen; he stood there watching Nathan to see if he was going to get a gun; he did not know he had killed him.

It is contended by appellant that he was justified in the killing, or if not justified, that the evidence is insufficient to sustain a conviction of murder in the first degree. The appellant was not tried for killing Nathan Frierson with whom he had trouble about his wife, but for killing Eugene Frierson, whom he shot in the back. It is his contention that he thought Eugene was going to get a gun, but this evidence is in conflict with that of appellee, and the jury had a right to disbelieve the evidence of appellant on this point. The evidence was ample to support the finding of the jury.

"Under the settled rule of practice the jury is the judge of the credibility of the witnesses and the weight to be given to their testimony, and it is also a well-settled rule that the evidence admitted at the trial will, on appeal, be viewed in the light most favorable to the appellee, and if there is any substantial evidence to support the verdict

930

of the jury, it will be sustained.'' *West* v. *State,* 196 Ark. 763, 120 S. W. 2d 26; *Daniels* v. *State,* 182 Ark. 564, 32 S. W. 2d 169; *Walls & Mitchell* v. *State,* 194 Ark. 578, 109 S. W. 2d 143; *Humphreys* v. *Kendall,* 195 Ark. 45, 111 S. W. 2d 492.

Appellant contends that the court erred in refusing to give his requested instructions Nos. 6 and 8, which read as follows:

Instruction No. 6: ''You are instructed that if you should find from the evidence in this case that the killing by Jimmie Herron of Eugene Frierson was voluntary upon a sudden heat of passion caused by provocation apparently sufficient to make the passion irresistible, and also without fault and carelessness, shot Eugene Frierson, honestly fearing for his own safety or life, he would be justifiable and should be acquitted.''

Instruction No. 8: ''The evidence discloses that the defendant killed Nathan Frierson before he shot Eugene Frierson and that the killing of Eugene followed the killing of Nathan so soon thereafter that you may take into consideration the circumstances and the state of defendant's mind at the time of the killing of Nathan in determining his state of mind at the time of shooting Eugene. If you should find from the evidence in this case that Nathan Frierson had, for some time previous to the killing, been giving attention to the wife of Jimmie Herron and endeavoring to persuade her to leave him and that this was known to said Herron, and should further find that Frierson had threatened to do violence to Herron, or in some way get him out of the way, so he could get his wife, and that these threats had been communicated to, or were known by, Jimmy Herron, then these facts may be taken into consideration in determining the state of mind of the defendant at the time of the shooting of Nathan and Eugene and the grade of the offense, if any, the said defendant may have committed.

''You are therefore instructed, if the defendant, Jimmie Herron, while away from home and looking for his wife, went to the house of the deceased, Eugene Frierson, among other places, for the purpose of taking his wife home if there and, if you should find from the evi-

dence, when Herron reached said house and saw her through the window with the said Nathan Frierson's arm around his wife, he suddenly flew into a high state of anger or passion, dethroning his reason because the said Frierson had taken his wife away from him, or was moved by a sudden fear of his own safety, if such is true, and, if you should find that the said Herron in this state of mind, shot and killed the said Nathan Frierson, and that he was still under this state of mind and fearing Eugene would kill him or do him great bodily harm and shot Eugene to protect himself, he would not be guilty of murder either in the first or second degree as charged in the indictment. In such events, you may consider these facts and all other circumstances connected with the killing, in determining whether he was guilty of manslaughter or whether he is guilty of any offense.''

Instruction No. 6 had the following notation on it, made by the court: ''Refused. Offered after all other instructions given and not legible.'' As to the court's refusal to give this instruction, see *Booe* v. *State*, 188 Ark. 774, 67 S. W. 2d 1019. Moreover, instructions 6 and 8 were fully covered by the general instructions given by the court, and it was not error for the court to refuse to give these instructions.

We have carefully examined all the instructions requested, given, and refused, and have reached the conclusion that the court did not err in its instructions to the jury or in its failure to give instructions.

We find no error, and the judgment is affirmed.