FORD *v.* STATE.

4679                                                    248 S. W. 2d 696

Opinion delivered May 12, 1952.

*Sims & Clarke,* for appellant.

*Ike Murry,* Attorney General, and *Dowell Anders,* Assistant Attorney General, for appellee.

ROBINSON, J. Appellant, a peace officer, was tried on an indictment charging him with murder in the second degree by shooting and killing Bunyan Wigley, and was convicted of involuntary manslaughter. There are three assignments of error urged on appeal that we think call for a discussion.

First, a shirt was introduced in evidence purportedly worn by Wigley at the time of the shooting for the purpose of showing the alleged bullet holes. It is contended by appellant that the shirt was not properly identified and, therefore, not admissible. The shirt in question was exhibited to Ray O'Neal, an embalmer at the funeral home in Monticello, who was asked the following question: "Where did you get that shirt?" Answer: "I took the shirt off Mr. Wigley." Thus, the shirt was properly identified by O'Neal.

After deliberating for a considerable time, the jury returned to the court room and the foreman stated that some of the jurors would like, in the presence of the Judge, to examine the exhibits again with no comments. Appellant urges as error the court's action in permitting the jury to take the shirt, which had been introduced in evidence, to the jury room, and cites the case of *Forehand* v. *State,* 51 Ark. 553, 11 S. W. 766, and *Moore* v. *State,* 185

Ark. 1189, 49 S. W. 2d 1041. Both cases are distinguishable from the case at bar.

In the Forehand case, a pistol and cartridges, alleged to have been owned by the deceased and found beside his body, were delivered to the jury while the jury was deliberating. It was shown that the lead had been bored out of one of the cartridges and the powder taken out, and the cap of the cartridge so bored had the appearance of having been snapped on; that this was done after the articles were delivered to the jury. This court held that the experiment conducted by the jury out of the presence of the defendant, his attorneys and the court, was prejudicial to the defendant. It was evidence taken by the jury out of court in the defendant's absence and called for a reversal of the cause.

In the case at bar there was no showing that any experiments were made with the shirt and apparently it was merely used by the jury for a more critical examination. The weight of authority is that the taking of an exhibit to the jury room by the jury for the purpose stated is not error. See 80 A. L. R. 108 Annotation. In the case of *Sanders* v. *State,* 4th Okla. Cr. Rep. 264, 111 Pac. 965, it was held that there was no objection to the jurors in the jury room putting on a coat worn by the deceased for the purpose of observing the location of the bullet holes therein.

In 23 C. J. S. 1201-2, it is said: "A new trial will not be granted because the jury take articles in evidence to the deliberation room and examine them, where no prejudice results to accused therefrom, and no new evidence is introduced thereby, prejudicial to accused, and there is no proof that the jury used such evidence in a manner inconsistent with its original presentation." In the Moore case cited by appellant, the jury did not examine the exhibit in the jury room and, therefore, is not in point.

We come now to an assignment of error which calls for a reversal of the cause. The defense was one of self-defense. Appellant was a peace officer at Monticello.

On the night of the fatal encounter he had observed Bunyan Wigley and had come to the conclusion that Wigley had been drinking to excess and should go home. He approached Wigley, who was sitting on a stool in a restaurant, and suggested that he had been drinking too much and ought to go home, which Wigley agreed to do. Thereupon, defendant left the cafe and walked out on the street where he entered into conversation with Doc O'Neal. Wigley came out of the restaurant and it is the contention of the defense that he approached Ford, the defendant, and asked him what right Ford had to direct Wigley to go home; that Wigley pulled a knife and attempted to cut the defendant; that Ford was the smaller of the two; that defendant got hold of Wigley's wrist but saw that he was going to be unable to keep from being cut; that he then pulled his pistol and fired several times killing Wigley.

A knife was produced at the trial, but the court held that it was not properly identified as the knife alleged to have been in the hands of Wigley, and therefore could not be admitted in evidence. We think the knife was identified sufficiently to be admitted in evidence.

Jim Echols testified that he found the knife lying near where the deceased fell a short time after the body was removed, and that he turned the knife over to John Reeves; night policeman. Reeves testified that he placed the knife in the glove compartment of the City automobile. It was further shown that T. R. Scott, City Marshal, removed the knife from the automobile and it was mailed to Alan Templeton, ballistics expert of the State Police Department. Templeton testified as to receiving it. Thus, the knife was properly identified as the one that Echols said he found near the body a short time after the shooting.

The knife was tentatively introduced and marked "Exhibit B" for identification purposes. After all the foregoing evidence pertaining to the knife had been introduced, the court said: "Ladies and gentlemen of the jury, under all the evidence as the court has followed it, there

is no positive identification of this knife being any knife that was used in the conflict. It was placed in the pocket by one man and stayed in there an indefinite length of time and taken out by another. Therefore, identification is lacking and I am telling you, so far as this individual knife is concerned, in arriving at your verdict, you will not consider this knife for either State or defendant, for lack of legal identification to back it up." The defense made its objection and saved its exception.

This ruling of the court materially weakened the defendant's plea of self-defense. He was contending that when he fired the fatal shots his assailant was attempting to cut him with a knife, and yet, so far as the jury was concerned, no knife was produced and admitted in evidence.

Reversed.