Ford *v.* State.

4726                                      257 S. W. 2d 30

Opinion delivered April 20, 1953.

*Sims & Clarke,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

J. SEABORN HOLT, J. This case is here on a second appeal, *Ford* v. *State,* 220 Ark. 517, 248 S. W. 2d 696. On a second trial, a jury again found appellant, Ford, guilty of involuntary manslaughter and fixed his punishment at a term of eighteen months in the State Penitentiary. From the judgment is this appeal.

For reversal, appellant first questions the sufficiency of the evidence. While admitting that he killed Bunyan Wigley, appellant contends that he did so while performing his duty as Town Marshal of Monticello, that Wigley was the aggressor, was drunk at the time, attacked appellant with a knife and that he shot Wigley in his own necessary self defense. The evidence shows that Ford had observed Wigley who seemed to him to be intoxicated and ordered him home. A few minutes later, Wigley accosted Ford and wanted to know his authority for ordering him home. Immediately thereafter, Ford drew his pistol and shot Wigley five or six times, kill-

ing him on the spot. Wigley was shot at least three times in the back. While there was some evidence on the part of Ford that Wigley was advancing on him with a knife, it was a question for the jury to determine whether, in the circumstances, Ford was warranted in killing him in necessary self defense. It was all important to determine whether Ford had reasonable grounds to believe that the danger was so pressing that in order to save his own life or prevent bodily harm, it was necessary to kill Wigley. *Fowler* v. *State,* 130 Ark. 365, 197 S. W. 568.

On the plea of self defense, the court gave the following instruction which appears to be a fair exposition of the law applicable: ''In ordinary cases of one person killing another in self defense it must appear that the danger is so urgent and so pressing that, in order to save his own life or to prevent himself receiving great bodily harm or injury, the killing of the other person is necessary; and it must appear also that the person killed was the assailant. But if the assault by the person killed is so sudden and so violent as to make it reasonably apparent that it would be as dangerous to retreat as not to retreat, then the killer would not be bound to retreat but to save his own life or prevent himself receiving great bodily harm, may stand his ground and repel the attack by force, even to the extent of taking the life of the assailant. But if one may safely retreat, at any time during the altercation, without immediately endangering his own life, or his bodily safety, it is his duty to retreat and not to take life; and if he does not, he cannot claim self defense.''

We think the evidence, which we do not detail, while conflicting, when considered in its strongest light in favor of appellee, as we must, was substantial and sufficient to support the verdict. *Herron* v. *State,* 202 Ark. 927, 154 S. W. 2d 351.

There was no error therefore in the trial court's refusal of appellant's request for an instructed verdict of acquittal at the close of all the evidence for the reason that such verdict may be directed only when the evidence

raises no material question of fact for the jury's determination. *Ruffin* v. *State,* 207 Ark. 672, 182 S. W. 2d 673.

Appellant next contends that he was tried before a jury of only eleven jurors "contrary to Art. 2, § 7 of the Constitution of the State of Arkansas, and contrary to §§ 43-1901, 43-2108 and 43-2109 of Arkansas Statutes of 1947."

The answer to this contention is that appellant not only agreed in open court to be tried before a jury of eleven, but made no objections, saved no exceptions and did not assign this as error in his motion for a new trial. The applicable rule is announced in *Yarbrough* v. *State,* 206 Ark. 549, 176 S. W. 2d 702; in this language: " 'On appeal from the circuit court, this court only reviews errors appearing in the record. The complaining party must first make an objection in the trial court, and this calls for a ruling on his objection. An exception must then be taken to an adverse ruling on the objection, which 'directs attention to and fastens the objection for a review on appeal.' The matters complained of, together with the objections and the exceptions to the ruling of the court, must be brought into the record by a bill of exceptions; and the motion for a new trial can serve no other purpose than to assign the ruling or action of the court as error'."

Next appellant argues that it was error calling for reversal for the trial court and the prosecuting attorney to mention, over his objections, the first trial and reversal of this case. Appellant says:

"The court erred by explaining to the jury, on their *voir dire* examination, about the case having been previously tried, and, upon appeal to the Supreme Court, had been reversed, and been sent back to the lower court for a re-trial, saying among other things, 'The Supreme Court reviewed the case and, not on the facts, but reversed it because I did not permit a knife, that was found, to be introduced in evidence,' " . . . and "in allowing the attorney for the State to tell the jury, in his opening statement, that the case had been previously tried, a conviction had, and a reversal on appeal, among

20

other things saying: 'The Supreme Court made a finding contrary to the finding in this case, and, therefore, sent it back for trial. The Supreme Court did not rule on the facts in this case whatsoever, but sent the case back to be tried by a jury of this county'."

In *Stanley* v. *State*, 174 Ark. 743, 297 S. W. 826, we held: (Headnotes 2 and 3) "In a prosecution for murder, it was not error for the prosecuting attorney in his opening statement to tell the jury of a previous conviction and reversal by the Supreme Court. (3) Much discretion as to what may be stated by the prosecuting attorney in his opening statement is given to the trial court, which should always see that the prosecuting attorney acts in good faith in making his opening statement."

It further appears that here the trial court properly admonished the jury that: "What the other jury did does not concern you one bit in the world. You are instructed by the Court that you will completely disregard what they did and you will act upon the evidence that comes from this witness stand and the instructions of the court."

Appellant also contends that: "The Court erred by allowing Ray O'Neal to testify, over objection and exception of defendant, and stick tape on dummy or coat form proposing to show holes in body of Bunyan Wigley, before any evidence whatever had been introduced by the State to the effect that Wigley had been shot by Ford or anyone else. . . . State asked Ray O'Neal, before any evidence had been offered showing that Ford or anyone else shot Wigley, 'Did Bunyan Wigley die from the effects of the bullet holes that entered his body?' Over objections and exceptions of defendant. That was prejudicial error. . . . He certainly was not qualified as an expert and his opinion, based on hearsay, was inadmissible and prejudicial."

Ray O'Neal, an embalmer, embalmed the body of the deceased. The court, in the circumstances, did not abuse his discretion in permitting him to testify as to the position of the bullet holes he found in the body before any testimony had been introduced to the effect that

Wigley had been shot by Ford. The governing rule is stated by Mr. Wigmore in this language: "Now it is obviously impossible to present all the facts at precisely the same moment or in the testimony of a single witness. Hence, some of the connected facts must be allowed to be presented before the others, even though the former, standing alone, are irrelevant.

"Thus the fundamental rule, universally accepted, is that, with reference to facts whose relevancy depends upon others, the *order of presentation is left to the discretion of the party himself,* subject of course to the general discretion of the trial Court (*ante,* § 1867) in controlling the order of evidence. In other words, if an evidential fact offered *has an apparent connection* with the case *on the assumption that other facts shall also be proved,* it may be admitted. No objection, therefore, can be made merely on the ground that the other facts have not yet been evidenced. The possibility that the other facts may not be made good is a necessary risk to be taken; and in case of a failure to make them good, the subsequent striking out of the evidence now offered is regarded as an adequate remedy." *Wigmore on Evidence,* Third Edition, Vol. VI, page 504, § 1871.

Nor did the court err in allowing in evidence a coat form or dummy substantially identical with the torso of Wigley, in form and size, in demonstrating the location of the bullet wounds found in the body. Such demonstrations are competent evidence if made under "substantially identical conditions, not absolutely identical." *Houston* v. *State,* 165 Ark. 294, 264 S. W. 869.

The above question propounded to O'Neal was not improper or prejudicial, in the circumstances. It was not necessary that O'Neal be an expert in order to state his opinion as to the cause of Wigley's death. He was shown to be an embalmer whose business it was to handle dead bodies. On the day of the killing, and shortly thereafter, O'Neal took an ambulance and picked up the body which he found "lying in the door on East Gaines close to a cafe," and took it to the funeral home, where he examined it "from head to toe." He further testified:

"Q. Will you state whether or not Mr. Wigley died from the effects of bullet wounds that he received on that night? A. Yes, sir. . . . Q. In preparing a body that has bullet holes in it what is your usual and customary practice with respect to sealing those holes; just describe generally to the jury? A. We have a small instrument, a screw-type, that can be placed in small holes and some you have to sew, these don't fit. Q. In the small holes you use a little screw and in the larger ones you have to use something else? A. Yes, sir. Q. And you do say now that you sewed them up, the large holes? A. Yes, sir."

We think a sufficient foundation had been laid as to O'Neal's knowledge of proven facts to qualify him to express an opinion that Wigley died from the effect of the bullet wounds which he found in his body. There appears to be no evidence that Wigley died from any other cause. There was other evidence that Wigley died as a result of the bullet wounds. We do not think any prejudice could possibly have resulted.

Appellant further contends in his motion for a new trial that the court erred in giving instructions 1 to 16 inclusive and No. 18 over his "general objections and exceptions." The Bill of Exceptions reflects that appellant only objected to instructions 2, 3, 4 and 5 and to none of the others above mentioned. "A general exception to several instructions will not be entertained on appeal if any one of them are good." *Coffer* v. *State,* 211 Ark. 1010, 204 S. W. 2d 376.

We have examined all these instructions and others given by the court and find each to be correct.

The court did not err in refusing to give appellant's requested instructions 1, 2 and 3 for the reason that they were fully covered by other instructions given to the jury. A trial court is not required to repeat or multiply instructions on any particular point.

We have not overlooked other assignments of alleged errors by appellant but we find all of them to be without merit.

Affirmed.