Nunley *v.* State.

4774                                                     270 S. W. 2d 904

Opinion delivered June 14, 1954.

[Rehearing denied October 4, 1954.]

*J. Hugh Wharton,* for appellant.

*Tom Gentry,* Attorney General, *Thorp Thomas,* Assistant Attorney General, for appellee.

J. S. Holt, J. George Nunley, appellant, was found guilty by a jury September 17, 1953, of the crime of assault with intent to kill (§ 41-606, Ark. Stats. 1947) and his punishment fixed at a term of five years in the State Penitentiary. From the judgment is this appeal.

For reversal, appellant first contends that the evidence was not sufficient to support the jury's verdict and that the trial court erred in refusing his request for a directed verdict at the close of all the testimony. We

hold that there was ample evidence to sustain the jury's verdict and that the court correctly refused appellant's request for a directed verdict.

On May 7, 1953, Nunley went to the home of his former wife's parents with full knowledge that she, after having been divorced from Nunley, had remarried and was then the wife of P. J. Ross. He had armed himself with a loaded automatic pistol, a deadly weapon. Ross was there at the time with his wife and had been there about five minutes when he noticed Nunley standing on the sidewalk in front of the house. Ross said to his mother-in-law: "There is George," and she said: "What does he want," and Ross answered: "I don't know." Ross's mother-in-law then called to Nunley and asked him what he wanted, whereupon Nunley walked to the front porch and asked if P. J. (meaning Ross) and Eunice were married. She told him that they were, and he replied: "That is all I want to know." Ross then asked Nunley if he had been seeing Eunice since their divorce and Nunley told him to let Eunice answer the question, and she answered in the negative, whereupon Ross walked off the front steps and Nunley pulled a pistol and began firing at Ross. Six shots appear to have been fired, four taking effect. Ross was wounded in the left wrist, left arm and in the right and left hips. Some of the bullets entered from the rear.

Ross's mother-in-law, an eye witness, testified: "Q. After the first shot what did P. J. (Ross) do? A. He turned and started walking off. Q. Then what happened? A. George (Nunley) shot again. Q. Then what did he do again? A. After he shot all the shots out of the gun he turned and went on. Q. P. J. did? A. George did. Q. Was anything said by George or P. J.? A. You mean before that started? Q. No, after George got through shooting? A. After George left he said he was going, but he would be back. Q. That is this defendant? A. That is right. Q. Was it dark then? A. It was pretty dark, it was around eight o'clock. Q. But you could recognize George and P. J. from standing distance? A. Yes, sir, because they were not too far from me. Q. Do you know how many

times George shot at P. J.? A. Imagine he shot at least five or six times. Q. Did he empty his gun? A. I am sure he did. Q. Did he click the gun after he emptied it? A. I am sure it was once or twice. . . . Q. Did you see P. J. Ross with any kind of weapon at the time? A. No, sir, I didn't see him with anything in his hand.''

Appellant argues that intent to kill was lacking, admitted the shooting, but claimed that it was done in self defense. This presented a fact question for the jury, which found him guilty of assault with intent to kill. The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Herron* v. *State,* 202 Ark. 927, 154 S. W. 2d 351; *Waterman* v. *State,* 202 Ark. 934, 154 S. W. 2d 813.

''While the intent to kill cannot be implied as a matter of law, it may be inferred from facts and circumstances of the assault, such as the use of a deadly weapon in a manner indicating an intention to kill, or an act of violence which ordinarily would be calculated to produce death, or great bodily harm. In determining whether or not the intent to kill should be inferred, the trier of the facts may properly consider the character of the weapon employed and the way it was used, the manner of the assault and the violence attendant thereon; the nature, extent and location on the body of the wound inflicted, if any; the state of feeling existing between the parties at and anterior to the difficulty; statements of the defendant, if any; and all other facts and circumstances tending to reveal defendant's state of mind. (Citing cases.) It is not essential that the intent should have existed for any particular length of time before the assault, as it may be conceived in a moment.'' *Davis* v. *State,* 206 Ark. 726, 177 S. W. 2d 190.

Here Nunley's actions, from substantial testimony, warranted the jury's finding that he intended to kill Ross. Had he succeeded in killing Ross, the evidence would have warranted a conviction of murder.

As indicated, there was no error in the trial court's refusal to instruct the jury to direct a verdict since the

evidence was ample to take the case to the jury. "The trial judge may direct a verdict only where the evidence raises no material question of fact for the jury's determination." *Paxton* v. *State,* 114 Ark. 393, 170 S. W. 80, and *Ruffin* v. *State,* 207 Ark. 672, 182 S. W. 2d 673. See also, *Keese and Pilgreen* v. *State, ante* page 261, 265 S. W. 2d 542.

Finally, appellant contends that the court erred in refusing to sustain his objections to certain alleged leading questions propounded to witnesses, Ruby Elder, Eunice Ross and P. J. Ross.

The record reflects that the trial court, in each instance, sustained appellant's objections and where the questions appeared to be leading required the prosecuting attorney to rephrase his questions. We hold, therefore, that this contention is without merit.

Affirmed.