UNITED STATES, Appellee

v

STEVEN C. LEONARD, Corporal, U. S. Marine Corps, Appellant

19 USCMA 353, 41 CMR 353

No. 22,359

April 3, 1970

*Michael J. Kunstler, Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Donald B. Brant, Jr.,* JAGC, USNR.

*Lieutenant Colonel Charles J. Keever,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

DARDEN, Judge:

On October 1, 1968, Lieutenant Robert Norfleet, Jr., regimental officer of the day at Camp Lejeune, North Carolina, attempted to stop a free-for-all among twenty to thirty Marines. The severity of the fighting caused this officer to draw a .45 caliber pistol, insert a magazine, chamber a round, and put on the safety. Before he could do more he was jumped from behind by an assailant identified as the appellant by the Lieutenant's driver. Much to Norfleet's surprise, the assailant, instead of attempting to take the gun away, forced the officer's hand and the weapon in it toward his chest and neck. Lieutenant Norfleet told the court, "I've never been so scared as when that finger was pressing down on the trigger and the muzzle was pointed at me. Then, I felt a tugging on my back, somebody was trying to pull this person off my back." The Lieutenant's assailant "went for my hand and my pistol." According to the witness, his attacker had both hands on the pistol "and at this time he was pulling it towards me." In further elaboration, the victim testified:

> "As soon as he grabbed me, he didn't just stand here like this, he started trying to push the pistol in like this and at this time my thumb . . . my thumbs got a, possibly you can see (standing up to show the

Law Officer), place where my thumb safety made a hole. About three layers of skin were tore off where the pistol was being twisted this way and this way. I was trying to push out, he was trying to push in and he pushed it around like this.

> • • • • •

> ". . . I didn't want him to get his finger in that trigger guard. I was going to try to protect the trigger guard if possible.

> • • • • •

> "He wasn't trying to put his finger in the trigger guard. I was afraid he was going to try to do so. So, I was going to keep mine in there."

Asked what he did to keep the weapon, Norfleet replied:

> ". . . I thought well he's going to try to take the pistol away from me but as soon as he grabbed it and turned it around like this (indicating toward his body) and my trigger finger was being pushed down then I got the realization that he was not going to take the pistol away from me.

> • • • • •

> "I was trying to . . . instantly as soon as I felt that trigger going down I started to push it away."

354

In contradiction, the appellant denied jumping Norfleet but did admit being a participant in the mass fight.

To convict Leonard of assault with intent to commit murder, the court-martial was required to find that he had assaulted Norfleet by pointing the Lieutenant's pistol at his chest and causing the trigger to be depressed, accompanied by an intent to kill. The court was told that these essentials could be shown by circumstantial evidence.

Appellate defense counsel contend that the record contains no proof of any act by the appellant from which it can be inferred he intended to kill Lieutenant Norfleet, that the means to kill the officer were not within his control, that he took no step necessary to execute such a purpose, and that any number of inferences can be drawn from the evidence in this case.

The nature of an assault and the use of a deadly weapon are two factors that indicate the presence of an ▪ intent to kill. Indeed, in Davis v State, 204 Md 44, 102 A 2d 816, 820 (1954), the Court declared:

"... If ... the use of the deadly weapon directed at a vital part of the body is shown, this is a fact, not a presumption of law, which, in the absence of mitigating circumstances, permits the inference that, as another fact, malice existed."

The Supreme Court of Arkansas similarly wrote in Murray v State, 240 Ark 34, 397 SW2d 812, 814 (1966):

" 'While the intent to kill cannot be implied as a matter of law, it may be inferred from facts and circumstances of the assault, such as the use of a deadly weapon in a manner indicating an intention to kill, or an act of violence which ordinarily would be calculated to produce death, or great bodily harm. In determining whether or not the intent to kill should be inferred the trier of the facts may properly consider the character of the weapon employed and the way it was used; the manner

of the assault and the violence attendant thereon; the nature, extent and location on the body of the wound inflicted, if any; the state of feeling existing between the parties at and anterior to the difficulty; statements of the defendant, if any, and all other facts and circumstances tending to reveal defendant's state of mind. (Citing cases.) It is not essential that the intent should have existed for any particular length of time before the assault, as it may be conceived in a monment.' Davis v State, 206 Ark 726, 177 SW 2d 190; Nunley v State, 223 Ark 838, 270 SW 2d 904."

The record of trial in this case is more revealing than the defense argument suggests. The testi- ▪ mony of Lieutenant Norfleet discloses that, despite his strenuous attempt to retain control of his own weapon, it was slowly turned against him until it pointed at his chest. Placed on the defense and fearful of his own death, Norfleet testified he felt his finger being forced to depress the trigger until it would go no further. The court-martial, therefore, could conclude that the appellant controlled the Lieutenant's actions and assumed control over the weapon that he held and that Leonard had attained the means to kill. His actions, as described by Norfleet, were without justification or excuse. Had death resulted, a court could have found the offense of murder had been committed. See paragraph 113f, Manual for Courts-Martial United States, 1969 (Revised edition). Guided by proper instructions, the court members had a basis for finding that the appellant committed an assault upon Lieutenant Norfleet with an intent to kill.

After findings and following the introduction of mitigating defense exhibits, this exchange occurred between opposing counsel:

"DC: At this time with the consent of the Trial Counsel and the consent of the accused Trial Counsel and Defense Counsel would stipulate to the following facts: first, that

Stephen LEONARD was relieved from his organization on a discharge, medical discharge, from the service, in accordance with BUMED instruction 1910.2e on 22 October 1968. That the accused has the GCT of 126, his proficiency marks are 4.2, his MOS 0311 . . .

"TC: We will join in this average proficiency as 4.2. We join in stipulation on those."

As a result of these statements, a question arises whether the court-martial had jurisdiction to try the appellant. According to the defense jurisdiction was lacking, because the stipulation of fact above is considered conclusive, in the absence of offsetting evidence.

Ignored by the defense is trial counsel's specific response which, if considered, reduces the area of agreement to the appellant's marks of proficiency. This limited agreement reduced the scope of the stipulation, despite defense counsel's statement of what he thought was attained. The possible ambiguity of the suggested stipulation is clarified by the testimony of Leonard, who, when asked by defense counsel of his "health condition," responded:

"A: Sir, I was awarded a medical discharge, for unfit for military duty because I have a bone disease in my right leg, sir.

"Q: And, is this the reason you were in Golf two-six (2/6)?

"A: Yes, sir, it is, sir. I was awaiting my discharge, sir."

Considering both answers it appears that at the time of his court-martial Leonard had not yet received a discharge. We note that paragraph 4a(1) of BUMED Instruction 1910.2E provides that where there is an indication of disciplinary action pending, including court-martial, no further action toward final disposition of a case "shall be taken until receipt of instructions from the Navy Department." In this case disciplinary action had proceeded to the point that the Article 32 investigating officer's report predates the day of Leonard's supposed discharge. Even if his discharge had been recommended we are at the same time certain that "neither the accused, nor anyone acting in his behalf, received the discharge certificate itself or notification thereof," if one had been issued. Military jurisdiction does not terminate without delivery or valid notice. United States v Griffin, 13 USCMA 213, 32 CMR 213 (1962); United States v Scott, 11 USCMA 646, 29 CMR 462 (1960).

For the reasons set out above, we affirm the decision of the board of review.

Chief Judge QUINN and Judge FERGUSON concur.