## UNITED STATES

v.

**Airman Basic John E. BAILEY, FR 254–15–9425 United States Air Force.**

**ACM S24888.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 8 Dec. 1979.

Decided 22 Jan. 1981.

---

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Major Wade B. Morrison. Captain Craig I. Bryant filed a brief on behalf of the accused.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Allen C. Rooten, USAFR.

Before EARLY, KASTL and MILLER, Appellate Military Judges.

## DECISION

KASTL, Judge:

The issue before us is whether court-martial jurisdiction existed over the accused, who was in the process of being discharged for the convenience of the Government. Finding that the military possessed jurisdiction, we affirm.

The accused was scheduled for early separation for government convenience pursuant to Air Force Regulation 39–10.[1] His Request and Authorization for Separation (AF Form 100) was dated 7 November 1979. He received an approved copy of the document on 8 November; it provided an effective separation date of *Tuesday, 13 November 1979.*

On Sunday, 11 November, after consuming many beers and frozen daiquiris, the accused was involved in on-base drunken driving and assaults upon a security policeman. He fled the scene, and area military and civilian police were alerted to apprehend him. After unsuccessful police efforts and an intervening Monday holiday, he was apprehended on 13 November around 0800 hours and placed in pre-trial confinement. He neither completed outprocessing nor received a discharge certificate, and he subsequently continued to receive military pay.

On 15 November, the accused was charged with driving while intoxicated and twice assaulting a security policeman in the execution of her duties, violations of Articles 111 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 911 and 928.

At trial, he contested *in personam* jurisdiction of the court. The judge ruled against the accused, who then pleaded guilty to driving while intoxicated but not guilty to the two assaults. He was found guilty of all offenses by a special court-martial consisting of members and sentenced to a bad conduct discharge, confinement at hard labor for two months, and forfeiture of $299.00 per month for two months. The convening authority approved the sentence as adjudged.

### I

Before this court, the accused renews his objections to the jurisdiction of the court-martial which tried him.

As then in effect, AFR 39–10 (C 2), para. 1–10c, 1 January 1979, provided:

1–10. Method, Effective Date, and Time of Separation:

c. Effective time. Except for court-martial jurisdiction purposes, the discharge or release from active duty of an airman takes effect at 2400 hours on the day of discharge. *For the purpose of determining court-martial jurisdiction, discharge or release is effective:*

(1) *At 0001 hours on the day of discharge if the airman has the separation order,* or

(2) At the precise time the separation order is delivered on the day of discharge. [emphasis added]

On its face, this provision suggests that in the case at bar: (a) the accused's apprehension and pre-trial confinement beginning around 0800 hours on 13 November occurred while he was still a member of the Air Force; but (b) court-martial jurisdiction over him had been relinquished.

---

1. Air Force Regulation 39–10, Enlisted Personnel, Separation Upon Expiration of Term of Service, for Convenience of Government, Minority, Dependency, and Hardship, dated 3 January 1977.

We decline to reach such a bizarre conclusion. To the contrary, we find paragraph 1–10c of AFR 39–10, void to the degree it conflicts with Article 2 of the Code, *supra.*

By its terms, Article 2, 10 U.S.C. § 802 subjects the following individuals to court-martial jurisdiction:

> . . . (1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment. . . .

The Congressional intent expressed in Article 2 is clear, and service regulations cannot restrict such jurisdictional scope in a manner contrary to the stated intent of Congress. See *United States v. Hutchins,* 4 M.J. 190 (C.M.A.1978).[2] Accordingly, we hold paragraph 1–10c of AFR 39–10 to be a nullity when it seeks to delimit court-martial jurisdiction within the last 24 hours of an enlistment.

Consequently, when the military commenced action with a view to trial by apprehending the accused and placing him in pre-trial confinement, it did so prior to his effective date of discharge and at a time when *in personam* jurisdiction existed over him.[3] Having attached by commencement of action with a view to trial, jurisdiction continued. Paragraph 11d, Manual for Courts-Martial, 1969 (Rev.).[4]

## II

Our affirmance does not rest solely on the basis that the regulation in question cannot restrict court-martial jurisdiction and that jurisdiction existed on the given facts. We also hold that the military judge did not err when he used a slightly different approach to determine that jurisdiction existed—namely, his decision that jurisdiction had attached on 11 November.

At trial, the military judge determined that: (1) probable cause existed for the gate guard to believe appellant violated Article 111, UCMJ, *supra* ; (2) the guard lawfully exercised custody over the accused; and (3) such conduct constituted commencement of activities with a view to trial under paragraph 11d of the Manual, *supra,* and established continuing jurisdiction over the accused.

In *United States v. Buckingham,* 9 M.J. 514 (A.F.C.M.R.1980), *pet. granted,* 9 M.J. 241 (C.M.A.1980), we indicated that when the issue of *in personam* jurisdiction is raised, it will be decided by the trial judge as an interlocutory matter, applying a preponderance of the evidence standard. Reviewing the decision below for abuse of discretion, we find no error. See also *United States v. Barbeau, supra,* at 574.[5]

2. In *United States v. Hutchins,* 4 M.J. 190 (C.M.A.1978), the Court of Military Appeals considered an Army regulation requiring the convening authority to take certain procedural steps before court-martial jurisdiction would continue over an accused being processed for discharge. Private Hutchins contended that the Government failed to follow its own regulation and that such failure precluded exercise of jurisdiction. The Court swiftly disposed of this contention, holding that regulations cannot diminish the effectiveness of jurisdiction mandated by Congress. Military regulations enjoy the force of law, the Court explained, but they must be consistent with Congressional enactments:

> As Congress has commanded that jurisdiction continues past the termination of enlistment, the regulation cannot restrict jurisdiction in a manner contrary to the intent of Congress as interpreted by this Court. . . . *Id.* at 192.

3. Any other result would lead to the anomaly that an enlisted member being separated under the then-operative AFR 39–10 could commit purely military crimes on the last day of service and, under certain conditions, claim sanctuary from court-martial. Such mischief cannot be the intent of Congress. See Judge Costello's thoughtful concurring opinion in *United States v. Torres,* 3 M.J. 659, 665 (A.C.M.R.1977). See also *United States v. Maurer,* 23 C.M.R. 503 (A.B.R.1957).

4. AFR 39–10 has been amended; today, all aspects of discharge—including court-martial jurisdiction—are governed by a single standard of 2400 hours on the date of discharge. IMC 80–1, dated 20 June 1980.

5. Our conclusion is buttressed by precedents holding that successful completion of a period of military service does not, in itself, serve to automatically discharge a service member. *United States v. Hutchins, supra; United States v. Leonard,* 19 U.S.C.M.A. 353, 41 C.M.R. 353,

We have considered the other errors assigned by accused and decide them adversely to him.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

MILLER, Judge, concurs.

EARLY, Chief Judge, concurring:

Like my brothers I agree that the Air Force had jurisdiction to try the accused for the offenses herein, but, since I reach that decision by a slightly different route, I feel constrained to record my reasoning.

The accused was being processed for administrative discharge prior to the expiration of his term of service. His orders provided that he was to be discharged effective 13 November 1979. On the early morning of 11 November 1979 the accused approached the gate at Eglin Air Force Base, Florida in his automobile. The gate guard noticed that his vehicle was weaving back and forth in the highway, and she asked him to stop and pull over to the side of the road. When she approached the window of the automobile, she noticed that his eyes were dilated and "grossly bloodshot." From her observations she concluded that he was under the influence of some type of intoxicant. She asked for his driver's license and his military identification card. The accused could not find his driver's license but gave the guard his military identification card. When he could not find his vehicle registration either, the guard told the accused to lock up the vehicle and come back to the gate. The guard planned to call the Security Police desk, explain the situation, and see if her supervisor would approve of letting the accused leave the vehicle at the gate and get a ride to the barracks with someone else. She also intended to check the "revocation-suspension list" to see if he was driving on the base illegally.

At this point the accused asked for the return of his identification card, which the guard refused and repeated her statement to come to the gate. The accused then .tried to snatch the identification card from the guard and wrestled her to the ground. He pounded her on the back with his fists. She let go of the card and tried to get up. The accused picked up the card and went to his car. The guard tried to read the license plate, and, failing, went to the front of the car to read the base decal. At this time the accused got into the car and drove off, almost hitting the guard.

The guard went to the gatehouse and notified the desk that she had been assaulted and asked for help. Shortly thereafter, the accused was identified and action was taken to notify military and civilian police in the area to apprehend him. On the following day, the accused's squadron commander was notified of the incident. On the 13th of November the discharge authority was notified, and the squadron commander formally requested revocation of the accused's discharge orders.[1] The Security Police did not locate the accused until

---

356 (1970); *United States v. Hout*, 19 U.S.C. M.A. 299, 41 C.M.R. 299 (1970); *United States v. Barbeau*, 9 M.J. 569 (A.F.C.M.R.1980); *United States v. Milam*, 22 C.M.R. 862 (A.F.B.R. 1956); *United States v. Entrekin*, 42 C.M.R. 530 (A.C.M.R.1970). To the contrary, various steps must be taken to terminate military status. Among them are completion of administrative processing, *United States v. Griffin*, 13 U.S.C. M.A. 213, 32 C.M.R. 213 (1962); *United States v. Barbeau, supra*; see also *United States v. Shenefield*, 40 C.M.R. 393, 394 (A.C.M.R.1968), rev'd on other grounds, 18 U.S.C.M.A. 453, 40 C.M.R. 165 (1969); receipt of a discharge certificate, *United States v. Leonard, supra*; *United States v. Scott*, 11 U.S.C.M.A. 646, 29 C.M.R. 462 (1960); *United States v. Cox*, 49 C.M.R.

350 (N.C.M.R.1974); receipt of final military pay, *United States v. Barbeau, supra; United States v. Milam, supra*; and sufficient notice to the individual whose status is being terminated, *United States v. Leonard, supra*. Since this accused did not receive a discharge certificate, did not complete administrative outprocessing, and continued to receive military pay, precedents support the concept of continuing military jurisdiction over him.

1. The revocation action was dated 14 November 1979 and the Special Order was dated 15 November 1979. See generally *United States v. Barbeau*, 9 M.J. 569 (A.F.M.C.R.1980).

0800 on the 13th,[2] and he was confined at that time.

Based upon this evidence the military judge made specific findings of fact: (1) that the security policeman at the gate had probable cause to believe that the accused had committed an offense under the Uniform Code of Military Justice; i. e., operating a motor vehicle while drunk; (2) that she took the accused into custody because of this offense; and that this was more than an investigative detention; (3) that this apprehension constituted the commencement of action with a view to trial within the meaning of paragraph 11d, Manual for Courts-Martial, 1969 (Rev.), and established jurisdiction under the provisions of Article 2(1), Uniform Code of Military Justice; (4) that jurisdiction over the offense attached at the time of the apprehension and continued until trial; and (5) that jurisdiction having attached, the self-executing effect of the separation orders was without any effect.

We have previously held that the issue of jurisdiction over the accused is an interlocutory matter to be decided by the military judge applying a preponderance of the evidence standard, and that his decision would be reviewed here on the test of abuse of discretion as is true of other interlocutory matters. *United States v. Buckingham*, 9 M.J. 514 (A.F.C.M.R.1980). As I view the evidence as presented to the military judge, I find no abuse of discretion which would warrant reversal of his decision.

However, I do not need to base this holding solely on the status of apprehension/custody of the accused at the gate. It is readily apparent that, after the tussle with the guard, all steps were taken to apprehend the accused not only for the drunken driving offense, but also for the subsequent offenses of assault on the security policeman. The only reason a consummation of the apprehension was not effected earlier was that the accused fled the scene (and apparently the base). To my mind the "all points bulletin" and the action taken by the Security Police and the accused's squadron commander fully satisfies the requirement of "commencement of action with a view to trial..." Manual for Courts-Martial, *supra*, paragraph 11d. In fact, all that remained to be done was the preferring of charges.[3] *United States v. Hudson* 5 M.J. 413 (C.M.A.1978); *United States v. Smith*, 4 M.J. 265 (C.M.A.1978); *United States v. Anderson*, 1 M.J. 498 (A.F. M.C.R.1975).

---

**2.** It was judicially noted that 11 November 1970 was a Sunday; 12 November 1979 was a holiday; and, that 13 November was the first duty day after the incident.

**3.** Charges were preferred on 15 November 1979.